IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

DAMIAN CYRUS KABORE

CRIMINAL CASE NO.

1:13-CR-217-ODE

ORDER

This criminal case comes before the Court on objections [Doc. 57] filed by Damian Cyrus Kabore ("Defendant") to a Report and Recommendation ("R&R") entered on May 6, 2014 by United States Magistrate Judge E. Clayton Scofield III [Doc. 54]. Magistrate Judge Scofield recommended that Defendant's motions to dismiss the indictment [Docs. 30 & 38] be denied,[1] and certified this case ready for trial [Doc. 54 at 15].

For the following reasons, Defendant's objections to the R&R [Doc. 57] are OVERRULED. The R&R [Doc. 54] is ADOPTED with the modifications described below, and Defendant's motions to dismiss the indictment [Docs. 30 & 38] are DENIED.

I.   **Background**[2]

In July 1999, Defendant, who is a native of Ghana, was admitted to the United States on a B-2 non-immigrant tourist visa

---

[1]Defendant perfected his preliminary motion to dismiss the indictment filed September 30, 2013 [Doc. 30] on November 17, 2013 [Doc. 38].  Judge Scofield held a hearing on the perfected motion on December 18, 2013 [see Docs. 41 & 42].  References to the hearing transcript are cited as "Tr. at" page number.

[2]The Court restates the facts as outlined in the R&R [Doc. 54], noting and addressing any objections asserted by Defendant below.

[Doc. 54 at 2]. Under the visa, he was authorized to remain in the United States for up to six months [Id.].

Approximately three weeks after his arrival in the United States, Defendant was charged with misdemeanor theft by shoplifting. After waiving his rights to counsel, in November 1999, he entered a plea of nolo contendere to that charge in the State Court of Gwinnett County [Id.; Doc. 38-1].[3] Defendant was sentenced to twelve months' probation and five days of community service, and he paid a fine of $350 [Doc. 54 at 2-3; Doc. 38-1 at 4].

In June 2006, Defendant was charged with and pleaded guilty to simple battery and disorderly conduct as a result of a domestic disagreement with his then-wife [Doc. 54 at 2; Doc. 38-2 at 1, 4-5]. He was sentenced to serve one day with credit for time served and the remainder of 12 months on probation [Doc. 54; Doc. 38-2]. He was further ordered to complete an anger management and/or domestic violence evaluation and treatment [Doc. 54; Doc. 38-2 at 3-3].

On November 19, 2011, Defendant was arrested in Barrow County for driving without a valid driver's license [Doc. 54 at 3].

---

[3]At the December 18, 2013 hearing, the parties stipulated that no transcript from that proceeding was available [Tr. at 29]. A copy of the final disposition from the 1999 case was attached to the Government's response to Defendant's motion. That document shows that Defendant entered a non-negotiated plea of "guilty" to the offense of theft by shoplifting [Doc. 38-1 at 1-3]. However, according to the waiver of formal arraignment document from the State Court of Gwinnett County, Defendant pleaded "not guilty nolo" [Doc. 38-1]. In his briefs in support of his motions, Defendant states that he entered a plea of nolo contendere to the charge [Doc. 38 at 2].

After it was determined that Defendant had overstayed his visa, he was taken into custody by Immigration and Customs Enforcement ("ICE"). At a hearing held on August 16, 2012, the Immigration Judge ("IJ") found that Defendant's removability was established. Defendant filed for cancellation of removal, and the Government moved to "pretermit" his application for cancellation of removal [Id.; Doc. 38-4 at 2].

The IJ held a second hearing on September 14, 2012,[4] after which he concluded that Defendant was ineligible for cancellation of removal based on his conviction on the shoplifting charge--a crime of moral turpitude punishable by a sentence of imprisonment of one year or more [Doc. 38-4 at 7].[5]   The IJ granted the Government's motion, and issued an order directing that Defendant be removed from the United States and returned to Ghana [Id. at 3-4].

Defendant appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), but withdrew that appeal while it was still pending [Doc. 39-4 at 2].  He then filed with the BIA a motion to reopen/reconsider appeal and a motion for emergency stay [Doc. 39-5 & -6].  Both motions were denied [Doc. 39-6 & -7].

------

[4]It appears that the time of that hearing was changed from afternoon to morning [Doc. 54 at 11].

[5]The order of removal also references Defendant's 2006 conviction of simple battery [Doc. 39-2 at 5].  However, it appears that the IJ relied primarily, if not exclusively, on Defendant's 1999 plea to the shoplifting offense.  The IJ referred to that plea as a "guilty plea," not a nolo contendere plea [Id. at 5].

According to the Government, on December 7, 2012, January 14, 2013, and February 4, 2013, ICE agents attempted to execute the removal order against Defendant, but he refused to board the airplane [Doc. 54 at 4]. The Government further alleges that on February 4, 2013, Defendant violently struggled as agents attempted to put him on the plane, causing one of the officers to be injured in the process [Id.].[6]

The superceding indictment charges Defendant with four counts. Counts One, Two, and Three allege that on December 7, 2012, January 14, 2013, and February 4, 2013, Defendant, an alien subject to a final order of removal, "connived and took any other action designed to prevent and hamper his departure, with the purpose of preventing and hampering his departure from the United States in violation of Title 8, United States Code, Section 1253(a)(1)(C)" [Doc. 21 at 1-2]. Count Four charges that on February 4, 2013, Defendant forcibly assaulted, resisted, opposed, impeded, and interfered with a federal immigration enforcement agent, who was engaged in the performance of his official duties at the time of the offense, in violation of 18 U.S.C. § 111(a)(1) and (b) [Id. at 3].

On September 30, 2013, Defendant filed a preliminary motion to dismiss the indictment [Doc. 30]. His perfected motion filed under 8 U.S.C. § 1252(b)(7)(A)[7] challenges the validity of the

---

[6]Defendant does not dispute the Government's allegations.

[7]8 U.S.C. 1252(b)(7)(A) provides in relevant part:
If the validity of an order of removal has not been judicially decided, a defendant in a criminal proceeding charged with violating section 1253(a) of this title may challenge the validity of the order in the criminal

4

removal order, on the grounds that his 1999 and 2006 pleas were involuntary and thus violated his due process rights under the Fifth Amendment and his rights to counsel under the Fifth and Sixth Amendment to the United States Constitution.

On December 18, 2013, Judge Scofield held a hearing on the motion [Doc. 42]. Defendant and the Government submitted post-hearing briefs on February 25, 2014 and March 17, 2014, respectively [Docs. 50 & 53].

## II.  Magistrate Judge Scofield's Recommendations

In his R&R filed December 3, 2013, Judge Scofield recommended that Defendant's motions to dismiss the indictment [Docs. 30 & 38] be denied [Doc. 54 at 14].

Judge Scofield first considered the Government's contention that Defendant failed to exhaust his administrative remedies and was therefore barred from challenging the validity of the removal order under 8 U.S.C. § 1252(b)(7)(A) [Id. at 7-9]. Noting that Defendant withdrew his appeal to the BIA before a ruling was made, the Magistrate Judge stated that "Defendant does not appear to have exhausted his remedies as to his claims in this Court" [Id. at 7]. He then proceeded to address the question whether section 1252(b)(7)(A) requires exhaustion, but ultimately found that it was unnecessary to resolve the issue and assumed that exhaustion was not required [Id. at 7-9].

---

proceeding only by filing a separate motion before trial. The district court, without a jury, shall decide the motion before trial.

Id.  A ruling that the removal order under review is invalid requires a dismissal of the indictment for violations of section 1253(a).  Id. § (b)(7)(C).

Judge Scofield next turned to Defendant's challenge to the validity of the removal order. He rejected Defendant's due process argument that his plea to the 1999 shoplifting charge was involuntary because the court in that proceeding did not advise him of the consequences of entering a nolo contendere plea [Id. at 9-11]. Noting that "the federal courts that have addressed the issue . . . have uniformly found that the possibility of removal or deportation is a collateral consequence of the guilty plea," he concluded that "the failure to advise Defendant of the possible removal consequences of his guilty plea did not violate Defendant's due process rights so as to invalidate his guilty plea and provide him a basis for relief from removal" [Doc. 54 at 10].

The Magistrate Judge also determined that Defendant's procedural due process rights were not violated, even though the change of the time of his removal hearing from afternoon to morning prevented him from presenting witnesses on the issue of cancellation of removal, because the IJ's decision was predicated on Defendant's ineligibility for cancellation of removal [Id. at 12].

Finally, because Judge Scofield found that the removal order was not invalid, he determined that there was no basis to dismiss the assault charge set forth in Count Four [Id. at 13].

## III. Discussion

### A. *Standard of Review*

Motions to suppress are governed by 28 U.S.C. § 636(b)(1)(B), which provides that "a judge may . . . designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and

recommendations for the disposition, by a judge of the court, of [the] motion." 28 U.S.C. § 636(b)(1)(B).

The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59(b)(3); United States v. Raddatz, 447 U.S. 667, 673-74 (1980).

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b), the Court must conduct a de novo review of those portions of the R&R to which Defendant timely and specifically objected. If there is no specific objection, the Court reviews the R&R for clear error. Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1373-74 (N.D. Ga. 2006) (Story, J.)(citing HGI Assocs., Inc. v. Wetmore Printing Co., 427 F.3d 867, 873 (11th Cir. 2005)). The Court deems Defendant to have waived his right to request review of any portions of the R&R to which he failed to timely and specifically object. FED. R. CRIM. P. 59(b)(2).

## B.   *Defendant's Specific Objections*

Defendant first objects to Judge Scofield's comment that it appears Defendant did not exhaust his administrative remedies prior to filing a motion under 8 U.S.C. § 1252(b)(7)(A) [Doc. 57 at 1]. His second (and main) objection challenges the Magistrate Judge's determination that the state court not advising Defendant of the possible removal consequence at the time of his 1999 plea does not deprive him of due process under the Fifth Amendment [Id. at 1-3].[8] Defendant also objects to the finding in the R&R that

---

[8]Defendant does not challenge Judge Scofield's determination that his procedural due process rights were not violated by the change of time for the removal hearing.

"the failure to advise the defendant of the possibility of adverse immigration consequences cannot give rise to a due process violation because it is a collateral consequence" [Id. at 3-4]. Finally, he submits that because the removal order was invalid, the assault count should be dismissed [Id. at 4]. The Court will address each objection in turn.

### C. *Analysis of Defendant's Specific Objections*

#### 1.    Exhaustion of Administrative Remedies

Defendant does not dispute that he withdrew his appeal to the BIA prior to decision. Similarly, he does not challenge Judge Scofield's determination that his motions to reopen/reconsider and for emergency stay were denied without reaching the merits of either motion. Rather, he argues that Judge Scofield's observation that Defendant appears not to have exhausted his administrative remedies is improper because the Magistrate Judge resolved Defendant's motion on its merits.

Defendant's objection is unfounded. Even though Judge Scofield ultimately assumed that exhaustion was not required, he did so after considering whether section 1252(b)(7)(A) requires exhaustion of remedies and concluding that neither side had provided any binding or persuasive authority directly on point. Accordingly, the comment objected to was necessary to his analysis of the applicability of the exhaustion requirement to Defendant's section 1252(b)(7)(A) motion. Indeed, Judge Scofield could not have addressed the Government's argument that Defendant's failure to exhaust his administrative remedies precludes him from challenging the removal order under section 1252(b)(7)(A) and the Court from hearing the motion without making a preliminary

determination whether Defendant actually exhausted his remedies prior to filing the instant motion.[9]  Accordingly, Defendant's first objection is OVERRULED.

Exhaustion of administrative remedies often is a prerequisite to obtain judicial review, and, according to the Government, it is a precursor to this Court's review of Defendant's removal order [Docs. 39 & 53].  The Government has not objected to Judge Scofield's assumption that the exhaustion requirement does not apply to Defendant's motion.  Nevertheless, its contention that Defendant is not entitled to judicial review of his removal order merits further discussion because that argument raises a legitimate question concerning this Court's subject matter jurisdiction [Doc. 39].  See Sundar v. INS, 328 F.3d 1320, 1323 (11th Cir. 2003) ("[W]e lack jurisdiction to consider claims that have not been raised before the BIA").  Thus, the Court addresses the question whether the exhaustion requirement set forth in section 1252(d) applies to motions brought under section 1252(b)(7(A).

---

[9]Defendant does not seriously argue that he exhausted his administrative remedies [see Docs. 30, 38].  The only statement that could be construed as making that assertion is contained in his post-hearing brief.  There, Defendant states: "there are grounds for this Court to conclude that Mr. Kabore did meet requirements for exhaustion of remedies, as he filed a motion to reopen before the Board of Immigration Appeals, which has the authority to grant relief at any time" [Doc. 50 at 9].  However, Judge Scofield expressly rejected Defendant's suggestion that his motion to reopen, which was denied without addressing the merits, met the exhaustion requirement [Doc. 54 at 7].  And, as noted above, in his objections, Defendant does not challenge or otherwise address that determination [see generally Doc. 57].

Section 1252, which is entitled "judicial review of orders of removal," consists of seven subsections, several of which are relevant for this analysis. Subsection (a) discusses, inter alia, "[g]eneral orders of removal" and "[m]atters not subject to judicial review." 8 U.S.C. § 1252(a)(1) and (2). Subsection (b) sets forth the requirements for review of removal orders. Id. § (b). Paragraph (7) in that subsection, entitled "[c]hallenge to validity of orders in certain criminal proceedings," states that "[i]f the validity of an order of removal has not been judicially decided,[10] a defendant in a criminal proceeding charged with violating section 1253(a) . . . may [file a motion] challeng[ing] the validity of the order in the criminal proceeding." Id. § (b)(7)(A). Subsection (d) entitled "[r]eview of final orders" provides for judicial review, inter alia, "only if--(1) the alien has exhausted all administrative remedies available to the alien as of right." Id. § (d). Finally, subsection (g) divests federal courts of jurisdiction over certain claims. Id. § (g).

As Judge Scofield noted in the R&R, there is no authority discussing the applicability of subsection (d)(1)'s exhaustion requirement to motions filed under section 1252(b)(7)(A) which challenge the validity of removal orders in criminal proceedings

---

[10]The validity of an order of removal "has been judicially decided" if and when the order has been reviewed by a court of appeals. See 8 U.S.C. § 1252(a)(5) ("a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review . . ., except as provided in subsection (e) of this section"). Subsection (e) deals with judicial review of orders under section 1225(b)(1)--"[i]nspection of aliens arriving in the United States." In the instant case, it is undisputed that Defendant's challenge to his removal order has not been judicially decided.

involving violations of section 1253(a). Defendant argues that section (b)(7)(A) does not contain any language mirroring the exhaustion requirement in subsection (d). He extrapolates from the absence of such statutory language the conclusion that judicial review of removal orders in "certain criminal proceedings" is not predicated on exhaustion. He further posits that section 1252(b)(7)(A) carves out an exception to the exhaustion requirement set forth in subsection (d). According to Defendant, the statutory language draws a distinction between criminal defendants on the one hand, and petitioners seeking civil and/or administrative relief, on the other, by affording the former an opportunity to obtain judicial review of the removal orders which "would underlie their [respective] criminal convictions and sentences" [Tr. at 20, 22; Doc. 50 at 8].

The Government asserts that the absence from section 1252(b)(7)(A) of the exhaustion language contained in subsection (d) does not warrant an inference that Congress intended to dispense with the exhaustion requirement as a predicate for judicial review in criminal proceedings [Tr. at 46]. The Court agrees. First, as Defendant stated during the December 18, 2013 hearing, the statute first sets forth generally applicable provisions, which are followed by an enumeration of requirements for review of removal orders [Tr. at 19-20]. Subsection (d), which states the exhaustion requirement applicable to "[r]eview of final orders[,]" does not contain any language implying that the exhaustion requirement is limited to petitioners in civil and/or administrative proceedings. In addition, although subsection (b)(7)(A) discusses challenges to the validity of removal orders

11

in certain criminal proceedings, there is no language that exempts criminal defendants from the remaining, generally applicable provisions of the statute.  Finally, Defendant's postulation is not supported by any authority.  Accordingly, the Court is persuaded that subsection (b)(7)(A) sets forth a parallel provision, which allows a defendant in a criminal proceeding charging a section 1253(a) violation to raise a challenge to the validity of the underlying removal order to the district court, instead of the Court of Appeals.[11]

In summary, having carefully reviewed the parties' arguments, the transcript from the December 18, 2013 hearing, and the post-hearing briefs, the Court concludes that subsection 1252(d)'s exhaustion requirement is applicable in the context of collateral

---

[11]See also Sundar, 328 F.3d at 1323 (applying section 1252(d)'s exhaustion requirement to a habeas petition challenging an order of deportation):

> While upholding the exhaustion requirement may seem strict in an individual case, exhaustion serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency.  The BIA was not given the opportunity to review the case because Kurfees neglected to appeal.  The exhaustion doctrine embodies a policy of respect for administrative agencies, which allows them to carry out their responsibilities and to discover and correct their own errors.  A rule that allowed parties to circumvent the administrative process under the circumstances of this case would undermine agency functions and clog the courts with unnecessary petitions.  The rules are clear: before proceeding to federal court, an alien must exhaust his or her administrative remedies. . . .

Id. (quoting Kurfees v. INS, 275 F.3d 332, 336 (4th Cir. 2001) (internal quotation marks omitted)).

challenges to the validity of removal orders brought under subsection 1252(b)(7)(A).

Turning next to the question whether Defendant exhausted his administrative remedies under the former provision, Defendant does not dispute that he withdrew his appeal before the BIA could make a decision.  He subsequently filed with the BIA a motion for emergency stay of removal and a motion to reopen.  The former motion was denied on the ground that "there is little likelihood that the motion [to reopen] will be granted" [Doc. 39-6].  The latter request to reopen was also denied as not being "properly before the Board, given that the respondent withdrew his appeal of the [IJ's] September 14, 2012, decision ordering the respondent removed to Ghana" [Doc. 39-7].  With respect to that motion, the BIA stated that Defendant "may seek reopening before the Immigration Court pursuant to 8 C.F.R. § 1003.23(b)" and that such a motion "will be subject to applicable time and number limitations" [Id.].[12]  Because the BIA did not reach the merits of Defendant's claims, the Court finds that he failed to exhaust his administrative remedies.

However, this conclusion does not end the inquiry.  What is left to determine is whether Defendant is raising constitutional claims over which the BIA lacks adjudicatory power.  See Sundar, 328 F.3d at 1325.  If the BIA has no power to consider a particular claim, Defendant need not exhaust such a claim.  Id. However, "where the claim is within the purview of the BIA which

---

[12]There is no indication that Defendant took any such action.

can provide a remedy, the exhaustion requirement applies with full force." Sundar, 328 F.3d at 1325 (citations omitted).[13]

Defendant's main claim is that his plea to the 1999 shoplifting charge was involuntary (and thus violative of his Fifth Amendment due process rights) because the court in that proceeding did not advise him of the possible immigration consequences of entering the plea.[14] The United States Court of Appeals for the Eleventh Circuit has cited with approval decisions from other circuits which have determined that "procedural due process claims, as well as procedural errors argued in due process terms, must be raised before the BIA." Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1251 (11th Cir. 2006) (citing Vargas v. U.S. Dep't of Immigration and Naturalization, 831 F.2d 906, 908 (9th Cir. 1987)). The Eleventh Circuit has also held that ineffective assistance of counsel claims are within the purview of the BIA. Dakane v. U.S. Att'y Gen., 371 F.3d 771, 775 (11th Cir. 2004); see also Sundar, 328 F.3d at 1325 (citing to Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir. 1994), which concluded that claimed due process error that immigration judge failed to advise petitioner of immigration consequences of admitting deportability

---

[13]Section 1252(a)(2)(D) of the statute does not afford Defendant any relief because it provides judicial review of "constitutional claims or questions of law raised upon a petition for review *filed with an appropriate court of appeals* in accordance with this section." 8 U.S.C. § 1252(a)(2)(D) (emphasis added).

[14]Although the transcript from the state court proceedings in question is unavailable, neither party disputes that Defendant was not informed of the possible immigration consequences prior to entering his plea.

could be corrected by BIA).

The instant case is somewhat distinguishable in that the alleged due process violations stem from the failure of a state court judge in an earlier proceeding to inform Defendant of the possible removal consequences of his plea. Nevertheless, though the BIA did not have the power to actually adjudicate Defendant's constitutional claims, such claims were within the purview of the BIA, which could have provided a remedy. Thus, the Court lacks subject matter jurisdiction to reach the merits of Defendant's due process arguments, which he failed to raise before the BIA. The R&R is MODIFIED accordingly.[15]

---

[15]Defendant also argues for the application of a second exception to the exhaustion requirement "where . . . jurisdiction is necessary 'to avoid manifest injustice'" [Doc. 50 at 10]. However, he only relies on out-of-circuit authority in support of that assertion.

Defendant's ancillary suggestion that this Court should apply the common-law futility exception in the context of section 1252(d) is likewise misguided. The law in this jurisdiction is that "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Sundar, 328 F.3d at 1326 (quoting Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)). Indeed, the Eleventh Circuit has expressly rejected a futility exception to the exhaustion requirement found in 28 U.S.C. § 1252(d)(1) where the petitioner is seeking review of final removal orders. Sundar, 328 F.3d at 1326 n.5 (citation omitted). Defendant is asking this Court to dismiss his indictment based on the purported invalidity of his removal order entered by the IJ. Thus, the exhaustion requirement contained in 8 U.S.C. § 1252(d)(1), by its plain terms, is directly implicated in this case.

2.    **The Validity of Defendant's Removal Order**

a)    *Whether the Decision in* <u>Padilla v. Kentucky</u>*, 559 U.S. 356 (2010) Affords Defendant the Relief Requested*

Out of an abundance of caution, the Court will address the merits of Defendant's challenge to the validity of his order of removal.    Assuming that the Court possesses subject matter jurisdiction over Defendant's constitutional claims, his order of removal is nonetheless valid.[16]    Defendant asserts that Judge Scofield's determination that he cannot avail himself of the decision in <u>Padilla</u> was in error.  He posits that the rationale of <u>Padilla</u> applies to claims alleging a violation of his Fifth Amendment due process rights.  According to him, his plea in the 1999 state action was not voluntary because he was not advised of the possible immigration consequences of that plea.

In <u>Padilla</u>, the United States Supreme Court held that counsel performs deficiently by affirmatively misadvising, or failing to advise, a non-citizen client of the deportation consequences of a guilty plea.  <u>Padilla</u>, 559 U.S. at 369.  However, the holding in <u>Padilla</u> applies to claims of ineffective assistance of counsel under the Sixth Amendment.  <u>Id.</u> at 365-69.  In the instant case, Defendant waived his rights to counsel in the underlying state action against him.    Therefore, his reliance on the holding of <u>Padilla</u> is misplaced.  Moreover, Defendant has not cited to any authority in support of his suggestion that <u>Padilla</u> should be applied in the due process context to assess the voluntariness of

---

[16]The Court does not address Defendant's procedural due process claim in relation to the immigration hearing because no specific objection was filed as to that claim.

a plea entered by a defendant who was not informed of possible immigration consequences by the court. In fact, at least one circuit court has rejected an almost identical claim presented to it after Padilla was decided. See United States v. Delgado-Ramos, 635 F.3d 1237, 1241 (9th Cir. 2011) ("While Padilla's holding is directly applicable to our Sixth Amendment analysis . . . , it sheds no light on the obligations a district court may have under Rule 11 and due process."). Accordingly, the Court declines Defendant's invitation to expand the reach of Padilla to Fifth Amendment due process claims. As such, his objection to Judge Scofield's determination that Padilla does not provide a basis for the relief requested is OVERRULED.

In addition, Judge Scofield correctly determined that Defendant, whose conviction became final in 1999 could not benefit from the decision in Padilla because that case articulated a new rule that could not be applied retroactively. See Chaidez v. United States, -- U.S. --, 133 S. Ct. 1103, 1105 (2013) ("We conclude that, under the principles set out in Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), Padilla does not have retroactive effect."); see also United States v. Gkanios, 536 F. App'x 854, 858 n.3 (11th Cir. 2013); United States v. Carmen-Iglesias, 514 F. App'x 922, 923 (11th Cir. 2013).

Defendant apparently concedes, as he should, that the holding in Padilla, upon whose rationale he relies for his due process claim, does not apply retroactively. Nevertheless, he argues that "the notion that a defendant must be advised of certain core information in order for his guilty plea to be valid is not unique to the context of Sixth Amendment right to counsel[; t]hat

17

principle also flows from the Constitutional requirement of due process" [Doc. 57]. Notwithstanding his tacit acknowledgment that the decision in <u>Padilla</u> applies only to ineffective assistance of counsel claims, Defendant urges the Court to transpose the analysis in that case to his due process claims [see Docs. 57 at 2-3 & 50 at 3-5]. Yet, he has not pointed to any authority that supports the proposition that regardless of whether the holding of <u>Padilla</u> is retroactive, its rationale applies to an entirely distinct category of claims grounded in Fifth Amendment due process. Accordingly, Defendant's specific objection to Judge Scofield's conclusion that <u>Padilla</u> may not be applied retroactively is OVERRULED.

### b) *Whether Possible Removal Constitutes a Direct or a Collateral Consequence*

The Court now addresses Defendant's objection to Judge Scofield's determination that the failure to inform Defendant of the possibility of removal renders his plea involuntary.[17]  A guilty plea must be both knowing and voluntary. <u>See</u> <u>Boykin v. Alabama</u>, 395 U.S. 238, 242-43 (1969). In order to enter a guilty plea voluntarily, one must be "fully aware of the *direct consequences*, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel." <u>Brady v. United States</u>, 397 U.S. 742, 755 (1970) (emphasis added).

---

[17]The Court acknowledges the Government's argument that notwithstanding his convictions, Defendant would have been subject to removal at the time of expiration of his six-month tourist visa (i.e., on January 20, 2000). Thus, the actual immigration consequence of Defendant's 1999 plea was his inability to seek relief from removal, not removal itself [<u>see</u> Doc. 53 at 6].

18

In _Padilla_, the Supreme Court noted that "deportation is a particularly severe 'penalty'" and a "harsh consequence," and concluded that "[t]he collateral versus direct distinction is thus ill suited to evaluating a _Strickland_ claim concerning the specific risk of deportation." _Padilla_, 559 U.S. at 356, 365-66. Nonetheless, the Supreme Court declined to decide whether deportation is a direct or a collateral consequence of conviction. _Id._ at 366.  Furthermore, "neither the Supreme Court nor [the Eleventh Circuit] has specifically held that a defendant's ignorance of immigration consequences renders his guilty plea involuntary." _Garces v. U.S. Att'y Gen._, 611 F.3d 1337, 1344 n.7 (11th Cir. 2010) (comparing _United States v. Campbell_, 778 F.2d 764, 768 (11th Cir. 1985), which held that deportation is merely a collateral consequence of criminal conviction of which there is no federal constitutional right to be warned, with _Padilla_, which did not resolve the question); _see also Llovera-Linares v. Florida_, No. 13-14595, 2014 WL 1244360 (11th Cir. Mar. 27, 2014) (holding, albeit for purposes of a habeas corpus petition, that the immigration detention of the petitioner in that case was a collateral consequence of his state court convictions and citing to _Campbell_, 778 F.2d at 768).

Defendant contends that "Padilla indicates a movement by the Supreme Court away from the strict analysis of direct versus collateral consequences in determining what information a defendant is entitled to be apprised of" [Doc. 57 at 4].  The cases on which Judge Scofield relied in concluding that a court's failure to inform a defendant of such consequences does not render his plea involuntary acknowledge the uncertainty caused by _Padilla_

19

with respect to the continued use of the direct versus collateral consequences dichotomy.[18]  See Doc. 54 (citing to United States v. Rodriguez-Penton, 547 F. App'x 738, 740 (6th Cir. 2013) cert. denied, 134 S. Ct. 1781 (2014); United States v. De La Cruz-Trejo, 518 F. App'x 286 (5th Cir. 2013)).   Notwithstanding that uncertainty, those courts had no trouble concluding that Padilla imposes no obligation on a district court under Rule 11 and the Due Process Clause to apprise a defendant of the possible removal consequences of a guilty plea.  See Rodriguez-Penton, 547 F. App'x at 740 (noting that the "Sixth Amendment provides more protection than the Due Process Clause" and that "though the Advisory Committee on Criminal Rules proposes an amendment to Rule 11 to include a 'generic warning' of deportation risks in the plea colloquy, the committee also notes that 'Padilla was based solely on the constitutional duty of defense counsel, and it does not speak to the duty of judges.'"); see also Delgado-Ramos, 635 F.3d at 1239 (discussing the "collateral" nature of a plea's immigration consequences in light of "the fact that deportation is 'not the sentence of the court which accept[s] the plea but of another agency over which the trial judge has no control and for which he has no responsibility,'" but ultimately holding that Padilla does not address a district court's obligations under Rule 11 and due process).

In the instant case, Defendant challenges the validity of his state conviction based on the state court judge's failure to

---

[18]In the absence of binding authority on point, the Court finds the out-of-circuit decisions cited in the R&R persuasive.

advise him of the immigration consequences of his plea; thus, Rule 11 is not directly implicated.    In Smith v. State, 287 Ga. 391 (Ga. 2010), the Supreme Court of Georgia defined direct consequences as "those within the sentencing authority of the trial court, as opposed to the many other consequences to a defendant that may result from a criminal conviction." Id. at 394 (citing to Padilla and Georgia cases exemplifying other collateral consequences).    Noting that deportation is "a consequence beyond the authority of the sentencing court, and one that does not lengthen or alter the sentence that the state court imposes" and recognizing that defendants may be provided with statutory safeguards[19] exceeding the trial court's obligations under the United States Constitution, the court in Smith concluded that "immigration consequences are 'collateral consequences' of a guilty plea" and that "the trial court's failure to advise a defendant regarding the potential impact does not require that the guilty plea be set aside as a matter of constitutional law." Id. at 392, 397, 399.

---

[19]The Court in Smith specifically referred to O.C.G.A. § 17-7-93(c) and Uniform Superior Court Rule 33.8(C)(2). Id. at 398-99. O.C.G.A. § 17-7-93(c) provides in relevant part: "In addition to any other inquiry by the court prior to acceptance of a plea of guilty, the court shall determine whether the defendant is freely entering the plea with an understanding that if he or she is not a citizen of the United States, then the plea may have an impact on his or her immigration status." Id.; see also Ga. Uni. Sup. Ct. Rule 33.8(C)(2) ("The judge should not accept a plea of guilty or nolo contendere from a defendant without first . . . (C) [i]nforming the defendant on the record: . . . (2) that a plea of guilty may have an impact on his or her immigration status if the defendant is not a citizen of the United States[.]").

In the instant case, Defendant's removal was beyond the authority of the state court. The Court does not deem it necessary to label the possibility of removal as a "collateral" consequence. Suffice it to say that the aforementioned authority compels the conclusion that the possible immigration repercussions were not a direct consequence of Defendant's 1999 and 2006 pleas, such that the state court's failure to inform him of the possible effect of those pleas did not violate his due process rights. Even though Judge Scofield noted that post-<u>Padilla</u> courts "have uniformly found that the possibility of removal or deportation is a collateral consequence of the guilty plea," he was careful not to categorize the removal consequences of Defendant's plea as "collateral." Rather, he correctly concluded that "the failure to advise Defendant of the possible removal consequences of his guilty plea did not violate [his] due process rights so as to invalidate his guilty plea and provide him a basis for relief from removal" [Doc. 54 at 11]. Accordingly, Defendant's objection is OVERRULED.

### 3.   Dismissal of the Assault Count

Finally, Defendant objects to Judge Scofield's conclusion that there is no basis for dismissal of the assault charge. Because the Court ADOPTS the R&R's conclusion that Defendant's order of removal is valid, that objection is also OVERRULED.

### 4.   Summary of the Court's Findings

In summary, the Court cannot consider Defendant's challenge to the validity of his order of removal because his failure to exhaust his administrative remedies mandated under section

22

1252(d), precludes him from seeking judicial review under section 1252(b)(7)(A).

Even if the Court had subject matter jurisdiction, it would find that Defendant's removal order was valid because the decision in <u>Padilla</u> does not afford him any relief, and the trial court's failure to inform him of the possible removal consequences of his 1999 and 2006 pleas did not run afoul of his due process rights.

In accordance with the above, the Court MODIFIES section B.1. of the R&R ("Exhaustion") with respect to Judge Scofield's discussion of the exhaustion requirement. The remainder of the R&R is ADOPTED.

## IV.  <u>Conclusion</u>

For the reasons above, Defendant's objections to the R&R [Doc. 57] are OVERRULED, and the R&R [Doc. 54] is ADOPTED AS MODIFIED. As a result, Defendant's motions to dismiss the indictment [Docs. 30 & 38] are DENIED.

SO ORDERED this _19_ day of June, 2014.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

23